(68 Misc. Rep. 70.)

In re BENSEL et al.

(Supreme Court, Special Term, Ulster County.  February, 1910.)

1. PRINCIPAL AND AGENT (§ 43*)—POWER OF ATTORNEY—REVOCATION—DEATH OF PRINCIPAL.

An instrument whereby in terms P. requests, authorizes, and empowers a company for her and in her name to take proceedings it may deem advisable towards obtaining compensation for any damage to her from land being taken or injuriously affected by certain condemnation proceedings, and whereby she agrees to pay certain compensation for its services, is at most a power of attorney, and therefore revoked by death of P. prior to the company acting under it.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 67–71;  Dec. Dig. § 43.*]

2. EXECUTORS AND ADMINISTRATORS (§ 80*)—GIVING POWER OF ATTORNEY.

One as executor being unable to contract with himself as president of a company cannot as executor give a valid power of attorney to the company.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 333;  Dec. Dig. § 80.*]

3. EXECUTORS AND ADMINISTRATORS (§ 96*)—CONTRACTS.

An executor has no power to contract to pay one $1,500 for obtaining for the estate $3,900 damages for the taking of land by condemnation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 410;  Dec. Dig. § 96.*]

4. ATTORNEY AND CLIENT (§ 143*)—COMPENSATION—UNCONSCIONABLE CONTRACTS.

The contract by which an old lady, having land apparently worth $3,900 which is to be condemned, agrees to pay one $1,500 for obtaining the damages, is unconscionable;  the case not being contingent, but there being only the simple issue of market value.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 328–331;  Dec. Dig. § 143.*]

5. ATTORNEY AND CLIENT (§ 177*)—ATTORNEY'S LIEN.

An attorney's lien for services as a lawyer can only be enforced on behalf of a lawyer, and not on behalf of a corporation, which made no appearance itself, and which can neither practice law itself or through lawyers employed by it to carry on for it the business of practicing law.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 386;  Dec. Dig. § 177.*]

6. CORPORATIONS (§ 14*)—PRACTICING LAW.

A corporation organized under the business corporation law (Consol. Laws, c. 4) cannot practice law either itself or through lawyers employed by it to carry on for it the business of practicing law.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 16–22;  Dec. Dig. § 14.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. CORPORATIONS (§ 487*)—VALIDITY.

    A corporation having no power either itself or through lawyers employed by it to carry on the business of practicing law, it cannot enforce any claim under its contract to perform legal services.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

In the matter of the application and petition of John A. Bensel and others, constituting the Board of Water Supply of the City of New York, to acquire real estate for and on behalf of the City of New York under Laws 1905, c. 724, and the acts amendatory thereof, in the towns of Olive, Marbletown, and Hurley, Ulster county, for the purpose of providing an additional supply of pure and wholesome water for the use of the city of New York. Ashokan reservoir, section 9, parcel 385. Heard on application for payment of award. Order for payment made.

    William D. Brinnier, for the State of New York Nat. Bank.

    Arthur A. Brown and Harrison T. Slosson, in person and for William Chauncey Preston, Mary M. Preston, and Frances E. Preston.

    James Dunne, for the Award Co.

    John G. Van Etten, in pro. per.

    Archibald R. Watson, Corporation Counsel, and Howard Chipp, Special Counsel, for the City of New York.

    BETTS, J. This is an application on behalf of the state of New York National Bank for the payment to it of an award of $3,900 and the interest thereon made to Charles M. Preston as the executor of the will of Susan M. Preston, deceased. This application is opposed in its entirety by various parties as will be hereinafter referred to, the principal opponent being a corporation known as the Award Company, which claims to be entitled to about $1,500 of said award for reasons which will be hereinafter briefly referred to. The motion is made upon "all proceedings and papers heretofore had or filed in relation to above-mentioned parcel" in addition to what was submitted on this motion. It appears: That Susan M. Preston was the owner on October 4, 1907, and for some time prior thereto, of parcel No. 385. That commissioners of condemnation were duly appointed by the Supreme Court for said parcel, and that said commissioners' oaths were filed in Ulster county clerk's office on October 4, 1907, and certified copies thereof in New York county clerk's office October 5, 1907. That Susan M. Preston died November 30, 1907. Her will was duly probated by the surrogate of Ulster county, and contains the following provisions:

    "First: After the payment of my just debts and funeral expenses, I give, devise and bequeath all my real estate of which I may die seized, and wheresoever situated, to William Chauncey Preston, Mary M. Preston and Frances E. Preston, all of the City of Kingston, N. Y., children of my deceased son, George C. Preston, share and share alike.

    "Second: I give, devise and bequeath to my son, Charles M. Preston of Kingston, N. Y., all the personal property of which I may be possessed at the time of my death, wheresoever situated."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles M. Preston died April 16, 1909, leaving a will which was duly probated by the surrogate of Ulster county. His executrix, Mary H. Preston, duly released and waived for a valuable consideration on August 16, 1909, to William Chauncey Preston, Mary M. Preston, and Frances E. Preston, their heirs, executors, administrators, and assigns, any interest or claim which Charles M. Preston had or claimed to have or which the estate of Charles M. Preston has or may claim to have in and to the said sum of $3,900 so directed to be paid to Charles M. Preston as executor of the last will and testament of Susan M. Preston, deceased. That is the award in question. By an assignment dated August 16, 1909, the said William Chauncey Preston, Mary M. Preston, and Frances E. Preston assigned said award of $3,900 for a valuable consideration to the State of New York National Bank "as a continuing and collateral security for the payment of any and all indebtedness of the said William Chauncey Preston, Mary M. Preston, Frances E. Preston and Cynthia M. Preston to the State of New York National Bank * * * by reason of notes * * * discounted," etc. It further appears that the amount due upon the said note to said bank was on June 1, 1910, the sum of $1,843 of principal and $9.22 interest.

The commissioners have found:

"That David Tichnor and Herrmine Tichnor are the owners of a mortgage covering this parcel, dated May 8, 1907, and recorded in the Ulster county clerk's office May 9, 1907, Book of Mortgages No. 281, page 130, upon which there is due $700 for principal and interest from May 8, 1907, and also that John G. Van Etten appeared before us as attorney for Charles M. Preston, individually and as executor of the will of Susan M. Preston, and for Mary M. Preston and Frances E. Preston, and Arthur A. Brown by Harrison T. Slosson, of counsel, appeared before us as attorney and counsel for William C. Preston. Subsequently John G. Van Etten withdrew his appearance as attorney and counsel for Frances E. Preston and Mary M. Preston. We recommend that the sum of $101 be allowed to John G. Van Etten for expenses and disbursements, including reasonable compensation for witnesses, and a further sum of $195 for counsel fees. We further recommend that there be allowed to Arthur A. Brown by Harrison T. Slosson as counsel for expenses and disbursements, including reasonable compensation for witnesses, the sum of $78."

This report was subsequently confirmed by the Supreme Court, and the recommendations of the commissioners followed. The court held:

"The person entitled to be paid the said sum (i. e., $3,900) is Charles M. Preston as executor of the will of Susan M. Preston, deceased, subject to the interest of said David Tichnor and Herrmine Tichnor, mortgagees as aforesaid."

The order further provided as follows:

"Parcel No. 385. John G. Van Etten appeared as attorney for Charles M. Preston, individually and as executor of the will of Susan M. Preston, deceased, and the sum of $101 is allowed for expenses and disbursements, including reasonable compensation for witnesses, and the further sum of $195 for counsel fees. Arthur Brown appeared as attorney for William C. Preston, one of the persons interested in said parcel, and the sum of $78 is allowed for expenses and disbursements, including reasonable compensation for witnesses."

The report was confirmed March 20, 1909.

Upon presenting the above-mentioned assignment to the representative of the comptroller's office, payment was refused and the money

was deposited with the Farmers' Loan & Trust Company, and this motion was made. Upon this motion Arthur A. Brown appears, and alleges that the total amount due to the State of New York National Bank from said award is the sum of $1,800 and interest thereon, and the affidavit of Mary M. Preston is filed, in which she recites that she has been appointed the administratrix with the will annexed of the estate of said Susan M. Preston, and asks that after the payment to the State of New York National Bank and the mortgagees that the Farmers' Loan & Trust Company pay to deponent and her brother and sister the amount of said award, and further asks that this court determine the interest of the respective parties therein.

An assignment is also filed by Arthur A. Brown and Harrison T. Slosson of the sum of $100 payable out of said award, said assignment being made by Mary M. Preston as administratrix with the will annexed of Susan M. Preston, deceased, and individually, and Frances E. Preston, and payment therefor is asked by Messrs. Slosson and Brown, and not objected to by said Mary M. Preston and Frances E. Preston.

Then comes into the motion said corporation, the Award Company, which presents a claimed contract or agreement or power of attorney dated November 3, 1906, signed by Susan M. Preston, which paper is short, and is inserted in full herein:

. "The Award Company. .

"The undersigned hereby request, authorize, and empower the Award Company, its counsel and agents, for me and in my name to take such proceedings as it may deem advisable toward obtaining compensation for any loss or damage whatsoever, sustained or which may be sustained, by me on account of any property, real, personal or mixed, taken in, or injuriously affected by, any action or proceeding on the part of 'the board of water supply of the city of New York' or the city of New York itself, in connection with such water supply or otherwise.

"In consideration of such services and necessary disbursements I do hereby promise, assign and agree to pay said company, its successors and assigns (plus all costs and expenses allowed), in full payment therefor—but only from and out of such awards as shall come to me by virtue of any such loss or damage—the sums following, to wit:

"(1) In respect of lands taken as designated on maps filed by the city of New York (a) a sum equal to ten per cent. (10%) of the amount allowed between the assessed value thereof as of 1905 and $1,500; and (b) a sum equal to fifty per cent. (50%) of the amount allowed in excess of said ($1,500).

"(2) In respect of lands injuriously affected but not taken a sum equal to twenty-five per cent. (25%) of the amount allowed for any decrease in the value thereof.

"(3) In respect of any other loss or damage whatever, a sum equal to one-third of the amount allowed, received or confirmed.

"Dated Kingston, N. Y., Nov. 3, 1906.
          "[Signed]          Susan M. Preston, 58 Fair St., Kingston, N. Y.
"In presence of:
          "[Signed]  William C. Preston."

This paper is not signed by the Award Company. It will be searched in vain to ascertain therefrom what it is that the Award Company binds itself or agrees to do or attempt to do for such liberal payment as it required Susan M. Preston to agree to pay it. There is no agreement to do anything on its part.

An affidavit is filed by Albert Baker the secretary of said company, in which he claims that the Award Company is entitled to $1,500 for services rendered under such contract from said award of $3,900; such services alleged consisting of establishing the amount of said award and the claims of Susan M. Preston or her estate or her executor therefor—in other words, legal services rendered by this corporation, the Award Company. It is claimed in the affidavit of Baker that, after the death of Susan M. Preston, Charles M. Preston as such executor and the party entitled to such amount as might be awarded herein authorized such Award Company to proceed under said contract between it and Susan M. Preston, and it is claimed that the Award Company is the owner of $1,500 of the award made in this proceeding (over one-third thereof) for legal services. Notice was filed by said Award Company with the comptroller of the city of New York claiming a lien against said award to the amount of said $1,500. Charles M. Preston during his lifetime was the president of the Award Company. It will thus be seen that the amount of claims is greater than the amount of the award.

It is urged on behalf of all the parties except the Award Company that it, the Award Company, has no standing in court; that it could not appear and practice law; and that therefore this contract, agreement, or power of attorney between it and Susan M. Preston was void, as there was no consideration moving between said company and said Susan M. Preston, and that the contract, also, if it had any validity in its inception, would be void because it was unconscionable in amount, and that, the contract being void in its inception, no validity or life could be imparted to it by Charles M. Preston thereafter. The principal contention therefore arises here as to the claim of the Award Company. If that is disposed of adversely to it, there are sufficient funds to satisfy the other claims, and leave an amount due to the owners of the award as made and confirmed by the court. I think that the Award Company has no standing here to enforce its lien against this award, for these reasons:

First. The agreement between Susan M. Preston and the Award Company bears date November 3, 1906. Susan M. Preston died November 30, 1907. The first hearing before the commission upon this claim was February 10, 1908. Assuming for a moment that the Award Company had any right or power to make such a contract, the most that could be claimed for it would be that it was a power of attorney, and the death of Susan M. Preston prior to the acting under that power of attorney would, of course, revoke it; so at the time the trial began the Award Company in any event had no power of attorney from Susan M. Preston.

Second. Charles M. Preston, as executor of the will of Susan M. Preston, could not make a contract with himself as president of the Award Company; hence he could not give as executor, if so disposed, a valid power of attorney to this corporation, if it could act as an attorney and counselor at law. No such power of attorney was submitted.

Third. An executor of an estate has no power in a case of this kind to enter into a contract with any person or persons and to agree to

pay therefor the sum of $1,500 for obtaining for the estate the sum of $2,400 by selling $3,900 worth of real estate, and no surrogate's court or any court of competent jurisdiction would pass such an account.

Fourth. The contract is utterly unconscionable between the parties. Here is an old lady possessed of premises apparently worth $3,900. She signs a contract with a corporation having no right or authority to practice law by which a bill is ultimately presented against her or her estate for $1,500 for legal services for recovering $2,400 to the estate. This is not a contingent case or a contingent fee. There is nothing contingent about the recovery in this case. There had to be a recovery and the issues were simple; i. e., the market value of the property. The city of New York was to take the property, and it was required by the act and by the Constitution to pay a just compensation therefor, and, in any event, the city could not escape that liability. In addition the act provides that compensation shall be made to the party or parties for reasonable counsel fee, and in this case as we have seen, in addition to the payment of witnesses fees, $195 was allowed to one counsel as counsel fees, which is to be paid by the city of New York. The land was there in plain sight. The city of New York was applying to obtain that land. Even assuming for a moment that the Award Company had the power to enter into such a contract, the conscience of the court would be shocked at the amount sought to be obtained for any services that could be rendered under that contract, or that were in fact rendered by any person or persons in this proceeding.

Fifth. A careful examination of the trial of the case which occupied two days with a part of a day for an argument concerning a law point therein fails to disclose any appearance whatever upon the part of the Award Company. The court had before it in this case Judge Van Etten and Messrs. Brown and Slosson. It made to them fitting and appropriate allowances for counsel and witness fees in this case. No one can practice law under disguise or without announcing his appearance to the court. It is extremely unlikely that if the court had been advised of the existence of any such contract as here claimed, and that such contract would be attempted to be enforced, that any allowance would have been made payable to the attorneys for the claimants from the city of New York. The court is entitled at all times to preserve its dignity, and for the furtherance of justice to know all the parties appearing before it either as attorneys or principals. It was so informed in this case at all stages until this motion was made, when for the first time it is claimed that there was a party claiming to surreptitiously represent all the interests of the claimants in this litigation at all stages and for some time before any hearing was had. Judge Van Etten and Messrs. Brown and Slosson had, so far as the record disclosed and so far as actual physical appearance went, appeared for the claimants. It is now claimed by Mr. Dunne on behalf of the Award Company that it, the Award Company, had been an invisible but present party all through the litigation, carefully protecting and establishing the rights of claimants. Judge Van Etten announced that he appeared, and he did so appear, before the commissioners for Charles M. Preston individually and as executor of the will of Susan M. Preston and for Mary M. Preston and Frances E.

Preston at its hearings, and on the motion and in the order for confirmation his appearance was so declared. Now, although the affidavit of Mr. Baker is very chary as to stating the nature and extent of the services rendered by the Award Company for the claimants, still the claim is now made by Mr. Dunne on the argument and in his brief that Judge Van Etten represented the Award Company at all times and was employed by it, an unknown party to this proceeding, instead of the claimants, as the court records show, and that the Award Company in fact represented the claimants. The lien against the award is claimed not on behalf of Judge Van Etten, the attorney of record, but on behalf of the Award Company as attorney for Susan M. Preston or her estate. An attorney's lien for services as a lawyer can only be enforced on behalf of a lawyer. Attention is also called in this connection to the silence of the paper signed by Susan M. Preston as to what the Award Company agreed to do for the $1,500 now claimed by it.

Sixth. The whole status of the Award Company and its rights under a paper of the kind submitted here has been definitely settled so recently as May 17th of this year by the Court of Appeals in the Matter of the Application of the Co-operative Law Company, a corporation organized under the business corporations law of the state of New York, reported in 198 N. Y. 479, 92 N. E. 15. The court there took up the question as to whether prior to the passage of an act which in direct terms prevents a corporation similar to this from practicing law such a corporation could practice law, and decides the question in the negative.

The corporation there seeking the indorsement of the Appellate Division in the Second Department was organized under the business corporations law with its objects stated in its certificate of incorporation practically similar to those of the Award Company, which are as follows:

"Second: The purposes for which such corporation is formed, are:

"To carry on, conduct, and transact a general claim and collection business, in the collection and enforcement of all manner of claims throughout the United States of America and elsewhere, and more particularly to take charge of the prosecution, enforcement, adjusting, and compromising of all claims for damages, direct or indirect, growing out of or accruing from, the condemning, taking and acquiring of private property, real, personal, or mixed, whether corporate or individual, for state, municipal or corporate purposes, or for any purpose whatever, under the right of eminent domain; to enter into contracts with parties and claimants in respect of the compensation to be received or retained by it in the collection of such claims, or the prosecution and enforcement thereof; and in connection therewith, to use and employ all such means, remedies and usages, including the retaining and employment of counsel, as shall be best calculated for the safe and successful collection, prosecution and enforcement of all such claims as shall be entrusted to its care, management and control.

"Also to purchase from such owners or claimants all their rights and interests in and to real, personal or mixed property taken or to be taken as aforesaid.

"Also to do all and everything necessary, suitable and proper for the accomplishment of any of the purposes or the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth, either alone or in association with other corporations, firms or individuals, and to do every other act or acts, thing or things incidental or appurtenant to or growing out

of or connected with the aforesaid business or powers, or any part or parts thereof, provided the same be not inconsistent with the laws under which this corporation is organized."

The court in the Matter of Co-operative Law Company, supra, in an opinion in which all the judges concur, says:

"We agree with the learned counsel for the appellant that the vital question is whether prior to the act of 1909 a corporation could be lawfully organized to practice law. He claims that authority may be found in that part of the business corporations law which provides that 'three or more persons may become a stock corporation for any lawful business.' Business Corporations Law (Consol. Laws, c. 4) § 2. This means a business lawful to all who wish to engage in it. The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. 'Quando aliquid prohibetur ex directo, prohibetur et per obliquium.' Co. Lit. 223.

"The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client, but the corporation, conducted it may be wholly by laymen, organized simply to make money and not to aid in the administration of justice, which is the highest function of an attorney and counsellor at law. The corporation might not have a lawyer among its stockholders, directors, or officers. Its members might be without character, learning, or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged, not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state. A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it. People v. Woodbury Dermatological Institute, 192 N. Y. 454 [85 N. E. 697]; Hannon v. Siegel-Cooper Co., 167 N. Y. 244, 246 [60 N. E. 597, 52 L. R. A. 429]. The Legislature in authorizing the formation of corporations to carry on 'any lawful business' did not intend to include the work of the learned professions. Such an innovation with the evil results that might follow would require the use of specific language clearly indicating the intention. Recent legislation simply emphasizes and protects the established policy of

the state, and, although ex post facto, tends to show that no such object was in contemplation when the. general term 'lawful business' was used in the statute to authorize the formation of business corporations. Laws 1909, cc. 483, 484. Business in its ordinary sense was aimed at, not the business or calling of members of the great professions, which for time out of mind have been given exclusive rights and subjected to peculiar responsibilities. All statutes relating to the same subject-matter must be read together, and construed as parts of an entire system. When the provisions of the Code of Civil Procedure regulating the practice of law and the conduct of lawyers are read in connection with the clause of the business corporations law quoted above, it is obvious that they do not relate to the same subject-matter, and that in enacting the latter the Legislature was dealing with something utterly foreign to the former. Code Civ. Proc. §§ 56–81; Judiciary Law (Laws 1909, c. 35 [Consol. Laws, c. 30]). The special provisions relating to lawyers were not modified or affected by the general provision authorizing the formation of business corporations. * * * The Appellate Division was clearly right in vacating its inadvertent order of approval, for it had no power to approve of an organization not authorized by law. Clark v. Scovill, 198 N. Y. 279 [91 N. E. 800]. The appellant was not 'a corporation lawfully engaged in a business authorized by the provisions of any existing statute,' and according to no possible construction of the final sentence of section 280 of the Penal Law (Consol. Laws, c. 40) could its 'existence, organization or incorporation' be lawfully approved by the Appellate Division."

An attorney's lien against a cause of action or the resultant verdict, judgment, or award can only be successfully asserted and maintained by an attorney and counselor at law. This Award Company is not an attorney and counselor at law, and it cannot, as the above case holds, act as such by employing competent lawyers to do the work which it claims to have done; in other words, it cannot do indirectly that which it cannot do directly. See, also, in this connection Bronold v. Engler, 121 App. Div. 123, 105 N. Y. Supp. 508, affirmed in 194 N. Y. 323, 87 N. E. 427, 21 L. R. A. (N. S.) 176, which holds that:

"Where parties hold themselves out as pursuing the trade of a master plumber, it is a violation of section 45 of the General Cities Law (Laws 1900, c. 327) to carry on that business without a license. Persons so doing are not exempt from the condemnation of the statute by the employment of a licensed master plumber as a manager of the business."

In that case an action was brought to recover a balance due the plaintiffs on a contract for furnishing plumbing materials and labor. It was defended upon the ground that at the time of the execution of the contract and of the performance of the work the plaintiffs were unlawfully engaged in the plumbing business, not being plumbers. A recovery was originally had which was reversed by the Appellate Division, and that reversal was sustained by the Court of Appeals. By analogy no recovery could be had by the Award Company in this case against Susan M. Preston or her estate or the estate of Charles M. Preston or William Chauncey Preston, Mary M. Preston, and Frances E. Preston for undertaking to act as attorneys and counselors at law without any authority so to do. Therefore, if no recovery can be had, certainly no attorney's lien against the award can be successfully maintained.

An order may be handed up providing for the Farmers' Loan & Trust Company from the amount deposited with it for the award and interest thereon to pay: First. To the mortgagees David Tichnor

and Herrmine Tichnor the sum of $700 and interest thereon from May 8, 1907, to the time of payment. Second. To the State of New York National Bank the sum of $1,843 principal and $9.22 interest thereon. Third. To William Chauncey Preston one-third of the remainder. Fourth. From the remaining two-thirds to Harrison T. Slosson and Arthur A. Brown the sum of $100. Fifth. The remainder of said two-thirds to Mary M. Preston and Frances E. Preston equally. The said order may also provide for the payment to John G. Van Etten of the amount, $296, awarded to him by the commission, and to Arthur A. Brown the amount, $78, awarded to him and confirmed by the order of the court.