IRVING et al. v. NEAL et al.

(District Court, S. D. New York. November 6, 1913.)

1. CORPORATIONS (§ 370*)—PRACTICING LAW—NEW YORK STATUTE.

Penal Law (Laws N. Y. 1909, c. 88 [Consol. Laws N. Y. 1909, c. 40]) § 280, which prohibits any corporation from practicing law, does not make it unlawful for a corporation to prosecute an action for the benefit of another at its own expense, employing members of the bar to conduct the case.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1518; Dec. Dig. § 370.*]

2. TRADE UNIONS (§ 4*)—LIABILITY OF MEMBERS—COMBINATION IN RESTRAINT OF TRADE.

A member and officer of a labor organization, who joins with others in the adoption of a rule or regulation which is made a part of the organic law of the organization and binding on all its members under penalty of a fine, if such rule or regulation is unlawful as in restraint of trade, is liable for anything done to carry it out, although he does not personally participate therein.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 3; Dec. Dig. § 4.*]

3. MONOPOLIES (§ 12*)—COMBINATIONS IN RESTRAINT OF TRADE—REGULATIONS OF LABOR ORGANIZATIONS.

A combination between local unions of organizations of carpenters and joiners, by which their members are pledged to refuse to work on any job where trim or finish made in a nonunion shop is used, is in restraint of trade and commerce, and, if it affects interstate commerce, is in violation of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), and it is immaterial that the combination is not directed against any particular concern or dictated by any malicious motive.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

4. MONOPOLIES (§ 24*) — COMBINATIONS IN RESTRAINT OF TRADE — STATUTORY REMEDIES.

Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prescribes the remedies for its violation, civil and criminal, at law and in equity, and under its provisions injunctive relief can be given only at suit of the government. Nor can such relief be granted under section 340 of the General Business Law of New York (Consol. Laws N. Y. 1909, c. 20) against a combination in restraint of competition in trade in violation of its provisions except at suit of the state.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

5. MONOPOLIES (§ 24*)—COMBINATION IN RESTRAINT OF TRADE—INJUNCTION.

Under Penal Law N. Y. (Consol. Laws N. Y. 1909, c. 40) § 580, subd. 6, which makes it a misdemeanor for two or more persons to combine to commit any act injurious to trade or commerce, but makes no provision for civil remedies, any appropriate remedy is available to one specially and directly injured by its violation who may, where the combination affects his business, obtain relief by injunction.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

In Equity. Suit by Charles R. Irving and Robert Casson, copartners doing business as Irving & Casson, against Edward H. Neal, individually and as secretary of the Joint District Council of New York and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Vicinity of the United Brotherhood of Carpenters and Joiners of America and Amalgamated Society of Carpenters and Joiners of America, and others. On final hearing. Decree for complainants.

See, also, 180 Fed. 896.

Walter Gordon Merritt, of New York City, for complainants.

Charles Maitland Beattie, of New York City (William P. Maloney, of New York City, of counsel), for defendants.

WARD, Circuit Judge: On April 30, 1910, this suit was brought by the complainants, citizens of Massachusetts, against the Joint District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America and Amalgamated Society of Carpenters and Joiners of America, which Joint Council is a voluntary unincorporated association, and also against certain individuals who were members of the United Brotherhood and all of whom were either officers of the Joint District Council or of the United Brotherhood. Jurisdiction depends upon citizenship. The bill has been dismissed against the Joint District Council, because it is a voluntary association, and not a citizen of any state, but sustained against the other defendants connected with the Joint District Council, because they are citizens of New York, and against the two remaining individual defendants, officers of the United Brotherhood of Carpenters and Joiners of America, who, although citizens of Indiana, have voluntarily appeared. 180 Fed. 896.

The bill alleges that the United Brotherhood is an unincorporated association, having affiliated with it over 1,900 local unions, composed of carpenters and joiners, aggregating some 170,000 members in the United States; that there are 70 of these local unions within the limits of the city of Greater New York, which, with certain branches of the Amalgamated Society of Carpenters and Joiners of America, have formed the Joint District Council of New York City and Vicinity, composed of delegates from the local unions and branches aforesaid; that this Joint District Council has power, under the rules of the United Brotherhood, to adopt regulations concerning strikes and the use of any material which it declares "unfair"; that it has made rules giving the business agents authority to call strikes, and has provided a penalty of $10 against any member who works on "unfair" trim—that is, woodwork made in a nonunion shop.

The bill then alleges that the complainants carry on an open shop for manufacturing fine interior woodwork or trim, in Massachusetts, and that the United Brotherhood, the Joint District Council, and the other defendants have entered into a combination to destroy their business and to prevent them from selling or installing their trim outside of Massachusetts until they operate their mill in Massachusetts as a closed or union shop; that, in pursuance of such conspiracy, the defendants have, among other things, put the complainants on "unfair" lists distributed to builders, architects, and owners, and have omitted their names from lists of "fair" shops circulated in the same manner, together with a letter saying that the employment of these shops will avoid labor troubles; have written letters to builders, architects, and

owners asking them not to contract with the complainants, because they are an "unfair" concern; have threatened and called strikes of various trades working upon buildings where the complainants' trim was being installed.

The prayer for relief is as follows:

"That the defendants * * * be restrained and enjoined from conspiring, agreeing, or combining in any manner to restrain, obstruct, interfere with, or destroy the business of the complainants, and from interfering in any manner with the complainants obtaining orders or contracts for work or materials or interfering in any manner with the sale or disposition of the product of the complainants' factory, or the installation or setting of any of the product of the complainants' factory upon any building or buildings and from publishing, circulating, or otherwise communicating either directly or indirectly in writing or orally to each other or to any other person firm, or corporation any statement or notice of any kind or character whatsoever calling attention to the fact that your complainants or their business or their products are or were or have been declared unfair or are on any unfair list, or that your complainants should not be patronized or dealt with or their products purchased, used, handled, worked upon, or dealt in because made in an open or nonunion shop, and from publishing, circulating, or communicating either orally or in writing any representation or statement of like effect or import for the purpose of injuring or interfering with or tending to injure or interfere with the complainant's business or with the free and unrestricted right of the complainants to dispose of their product and to obtain contracts for work to be performed or orders or contracts for merchandise to be made, installed, or set by them, and from giving notice verbally or in writing to any person, firm, or corporation to refrain from soliciting, making, or carrying out contracts with complainants for services to be performed or merchandise to be made, or to refrain from purchasing or attempting to purchase materials of any sort from complainants under threats that if such contracts or purchases are made or carried out they will cause the persons so notified loss or trouble, or that they will cause persons in the employ of said persons so notified to withdraw from their employment, or that they will cause persons employed by others upon buildings where said persons so notified are doing work to withdraw from all work upon said building, and from inducing or attempting to induce any person or persons whomsoever to decline employment or cease employment or not to seek employment under any person, firm, or corporation because such persons, firm, or corporation may have made contracts or purposed to make contracts with complainants or may have purchased or purposed to purchase materials from the complainants, or because materials furnished by the plaintiff were being used on or in connection with some building where said persons were doing work, and from in any way inducing or attempting to induce any person or persons to refuse to install or work upon materials manufactured by your complainants, and from enforcing or attempting to enforce or threatening to inflict any injury, loss penalty or liability, whether in the nature of a fine, or suspension, or expulsion from any labor organization or otherwise against any person who works for your complainants or upon materials furnished by your complainants, or against any person who works for any employer who purchases materials from your complainants, or against any person who works upon any building where the materials of complainants are being installed or are about to be installed, and from making, communicating, or circulating any statement orally or in writing that the defendant or members of any union, or working men will refuse to work upon any materials unless said materials are constructed under strict union conditions, and from requesting customers, or those who might become customers, of the complainants, to purchase their wood materials from or have their woodwork done by persons or corporations who use the union label of the United Brotherhood of Carpenters and Joiners of America or who operate their factories according to the rules and regulations of said Brotherhood, so that no controversy or difficulty can arise on account of nonunion woodwork and from using said label to obstruct and interfere

with the complainants' business and from combining, conspiring, and confederating together to refuse to work upon materials unless they are made under strict union conditions and from publishing, circulating, enforcing, and attempting to enforce the provisions of section 52–C of the by-laws of the District Council of New York and Vicinity, which is as follows:

" 'Any member proven guilty of using the product of any person, firm or mill who have been declared unfair by their District Council, or working for any person, firm or mill who have thus been declared unfair shall be fined ten dollars ($10) for each offence.'

" 'And from publishing, circulating, enforcing, and attempting to enforce section 78 of the by-laws of the District Council of New York and Vicinity, which is as follows:

" 'Any person of this United Brotherhood who is required to put up material not bearing this union label (meaning the carpenters' label) shall forthwith report the facts to the business agent in writing. Failing to do so he shall be fined.'

"And from using any and all ways, means, and methods of doing any of the aforesaid forbidden acts and from doing any of the forbidden acts either directly or indirectly or through by-laws, orders, directions or suggestions to committees, associations, officers, agents, or others."

The defendants in their amended answer admit that the members of the United Brotherhood have bound themselves to work only on union trim, and that those represented by the Joint District Council are subject to a fine of $10 if they knowingly do so. Articles tenth and eleventh are as follows:

"Tenth. That it is true that under the rules of the United Brotherhood its members have bound themselves, without thought of and probably without knowing of the existence of the plaintiffs, to work only under union conditions which established certain wages and hours, and to work only on the products of mills running under union conditions. That there are several thousand mills in this country, several hundreds of which are larger than the plaintiffs, and of all said thousands of mills probably not more than half are union. That there is no more reason for the defendants to refuse to work on the products of plaintiffs' mill than on many hundreds of other nonunion mills, the sole reason being that plaintiffs' mill is nonunion, and there never has been a conspiracy to act against their mill on the part of the defendants, there could be no such conspiracy against them under the circumstances among the approximate 200,000 members of the Brotherhood of Carpenters, and the allegations to the effect that their mill, among the many hundreds of other nonunion mills, has been selected to conspire against are untrue and without reason. Whenever the members of the Brotherhood of Carpenters find that they are required to work on nonunion products of any mill, they cease under their contract or rules of membership to work upon such products, and, if they knowingly work on any nonunion products, they are subject, as stated in said complaint, to be fined $10, but these defendants know of no case where a member has been fined for working on the products of these plaintiffs, which they believe to be due to the plaintiffs employing nonunion men, or that members worked thereon without it being disclosed to them that said millwork was nonunion.

"Eleventh. That prior to all the times complained of in the complaint many of the large contracting employers of labor at the city of New York in the building line had united with different organizations of labor in what is known as the Arbitration Agreement, for the adjustment of all differences among them, and said contracting employers and the Brotherhood of Carpenters of this city had their separate trade agreement for their mutual interests of arbitration and to prevent strikes and lockouts, to fix wages and hours of the journeymen, and provide for union conditions. That in and by said trade agreement said journeymen carpenters are not to work on nonunion products of mills, but there is no discrimination against any one mill. They further allege, on information and belief, that the plaintiffs from time

to time, well knowing of these arbitration and trade agreements, have sought to have these particular employers under these said agreements and members of the Brotherhood and Amalgamated Carpenters put up and install the products of their nonunion mill without disclosing to either parties to said arbitration and trade agreements that the said products were nonunion. That the effect of the injunction asked for herein would be to destroy said arbitration and trade agreements, and reduce said city to the chaos of lockouts and strikes which has at times existed in the building trades, and compel these union men to handle the cheap products of hundreds of nonunion mills all over the country, and would further destroy the business of many union mills in this state which pay higher and union wages commensurate to the higher cost of living here. That under the decisions of the highest courts of this state and district as they are advised, they are not required to handle the products of nonunion mills, so that an injunction which can only be given in the federal courts to nonresidents—the diversity of citizenship only giving jurisdiction—would have the effect of compelling them to handle the products of the nonunion mills of residents of other states, and would so discriminate against mills of this state."

The particular case of a sympathetic strike threatened by the defendant Blumenberg, a business agent of the Joint District Council at the Cathedral of St. John the Divine in this city, resulted in the issuance of a restraining order and preliminary injunction prohibiting the individual defendants, both individually and officially, from interfering with the complainant's business. The case now comes up on final hearing.

[1] The defendants make a preliminary objection that the bill must be dismissed because the cause has been conducted at the expense of the American Anti-Boycott Association, and by lawyers paid by it in violation of section 280 of the Penal Law (Consol. Laws N. Y. 1909, c. 40). Assuming that this section applies, I do not think that the complainants' cause of action is affected in any way. If the Anti-Boycott Association were the owner of the claim, relief might be denied it. Matter of Bensel, 68 Misc. Rep. 70, 124 N. Y. Supp. 726. But the only connection the association has with the claim is to prosecute it for the benefit of the complainants at its own expense. Exactly the same thing is being done for the defendants by the United Brotherhood and Joint District Council. The attorneys who conduct the case on behalf of the complainants are qualified to practice at the bar of the court, so that such cases as Kaplan v. Berman, 37 Misc. Rep. 502, 75 N. Y. Supp. 1002, do not apply.

[2] I find that the allegations of the bill as to particular instances in which the purpose of the combination was carried out or sought to be carried out against the complainants are true as matter of fact. The defendants contend that, even if this be so, the bill should be dismissed as without equity against them because they have not individually published "unfair" lists or called or threatened sympathetic strikes, and further because no "unfair" lists have been published or sympathetic strikes called for the past two years. They are, however, members of the United Brotherhood and of the local unions represented by the Joint District Council and are officers either of the Brotherhood or Council. Several of them did actually take part in some of the particular instances stated in the bill. At all events, if the thing principally complained of, viz., an agreement not to work on nonunion trim

enforceable by fine is unlawful, they are liable for anything done to carry it out, even though they did not individually participate. The agreement is a part of the organic law of the associations of which they are members and officers, and, of course, they cannot say they are ignorant of it or do not participate. The admissions of their answer are to the contrary. I think this proposition consistent with the opinion of the Circuit Court of Appeals for this circuit in Lawlor v. Loewe, 187 Fed. 522, 109 C. C. A. 288. So also, assuming that the acts complained of in the bill or some of them have been discontinued, further commission of them may be properly enjoined if they are unlawful.

[3] There can be no question: First, that a combination does exist between the various local unions which constitute the United Brotherhood; second, that one of the purposes of the combination is to compel the unionization of all manufacturing carpenter shops; third, that the object is to restrain competition between open shops and union shops; and, fourth, that this object is to be accomplished principally by an agreement to refuse to work on any job where nonunion trim is used. It further appears that an agreement exists between the Master Carpenters Association, composed of the principal employers of carpenters in Greater New York, and the Joint District Council, whereby the builders agree to use only union trim, which I think the builders were coerced into making by the unions. The effect of it is. that nonunion trim, except of negligible sizes, cannot be sold throughout almost the whole of that territory.

It is said that workmen have a right to refuse to work for any reason they choose, good or bad, which is. satisfactory to themselves. This is true, but it does not follow that they have a right to combine to do so some 200,000 strong over the whole country. Doubtless the purpose of the combination is to advance their own interests without actual malice against manufacturers who do not wish to operate their mills in accordance with the requirements of the unions. This, however, is true of almost every combination in restraint of trade. The combination in this case results all the same in directly restraining competition between manufacturers.

The precise question of law to be determined is whether this feature of the combination, there being no right of action at common law, is made unlawful by, and may be enjoined under, any statute.

[4] I think it is shown to be unlawful under the Sherman law by the decision of the Supreme Court in Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815. In that case the United Hatters of North America, composed of some 9,000 members, associated with other labor unions as the American Federation of Labor, aggregating more than 1,000,000 members, combined to unionize all factories in which the United Hatters worked. The particular party proceeded against was Lawlor & Co., not for the purpose of restraining interstate commerce, nor out of any hostility to that particular concern, but entirely for the purpose of benefiting the United Hatters. Yet the method of enforcing the combination was held unlawful under the Sherman Law because it resulted directly in restraining interstate commerce. I think the mere agreement of the local unions

throughout the United States in this case not to work on nonunion trim necessarily and directly restrains interstate commerce in the same way and is therefore unlawful. But because the Sherman Law prescribes the remedies, both criminal and civil, at law and in equity, it is held in this circuit that only the prescribed remedies can be pursued. From this it follows that the injunctive relief can only be had at the instance of the government, and therefore that the complainants cannot recover. National Fireproofing Co. v. Mason Builders' Ass'n, 169 Fed. 259, 94 C. C. A. 535, 26 L. R. A. (N. S.) 148.

Section 340 of the General Business Law of this state (Consol. Laws, 1909, c. 20) makes any combination, whereby competition in the supply or the price of any article in common use in the state is restrained, a misdemeanor. Interior trim such as the complainants manufacture is such an article; but, as the law confers the remedy by injunction on the state and elaborately prescribes the procedure, I am bound to follow the suggestion made in the National Fireproofing Case, supra, that under this act also injunctive relief can be had only at the suit of the state.

[5] Section 580 of the Penal Law of this state, subd. 6, makes it a misdemeanor for two or more persons to conspire to commit any act "injurious to trade or commerce." Without discussing the multitude of decisions cited by counsel, the reasoning in the case of Loewe v. Lawlor, supra, seems to me enough to show that the combination in this case is such an act. See, also, People v. McFarlin, 43 Misc. Rep. 591, 89 N. Y. Supp. 527. As the act says nothing whatever about civil remedies, I think any appropriate remedy is available to one especially injured by violation of it.

This was the view of the Court of Appeals in Cranford v. Tyrrell, 128 N. Y. 341, 344, 28 N. E. 514, 515, an action to restrain defendant from keeping a house of ill fame, made a misdemeanor by section 322 of the Penal Code. So far as this was a common nuisance, it was for the public authorities to suppress it, and the defendant contended that the plaintiff could not maintain a civil action. Judge Gray said:

"If the business complained of is a lawful one, the legal question presented in a civil action for private damage is whether the business is reasonably conducted, and whether, as conducted, it is one which is obnoxious, and hurtful to adjoining property. If the business is unlawful, the complainant in a private action must show special damage, by which the legitimate use of his adjoining property has been interfered with, or its occupation rendered unfit, or uncomfortable. That the perpetrator of the nuisance is amenable to the provisions and penalties of the criminal law is not an answer to an action against him by a private person to recover for injury sustained, and for an injunction against the continued use of his premises in such a manner. The principle has been long settled that the objection that the nuisance was a common one is not available, if it be shown that special damage was suffered. Rose v. Miles, 4 M. & S. 101; Rose v. Groves, 5 Man. & G. 613; Francis v. Schoellkopf, supra [53 N. Y. 152]; Lansing v. Smith, 4 Wend. [N. Y.] 9 [21 Am. Dec. 89]. * * *

"In the present case the indecent conduct of the occupants of the defendant's house and the noise therefrom, inasmuch as they rendered the plaintiffs' house unfit for comfortable or respectable occupation, and unfit for the purposes it was intended for, were facts which constituted a nuisance, and were sufficient grounds for the maintenance of the action. If it was a nuisance which affected the general neighborhood and was the subject of an

indictment for its unlawful and immoral features, the plaintiffs were none the less entitled to their action for any injury sustained and to their equitable right to have its continuance restrained."

This case was cited with approval in Re Debs, 158 U. S. 564, at page 593, 15 Sup. Ct. 900, 909 (39 L. Ed. 1092); Mr. Justice Brewer saying:

"Again, it is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive power of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law. Thus, in Cranford v. Tyrrell, 128 N. Y. 341, on page 344 [28 N. E. 514, 515], an injunction to restrain the defendant from keeping a house of ill fame was sustained; the court saying: 'That the perpetrator of the nuisance is amenable to the provisions and penalties of the criminal law is not an answer to an action against him by a private person to recover for injury sustained, and for an injunction against the continued use of his premises in such a manner.' And in Mobile v. Louisville & Nashville Railroad, 84 Ala. 115, 126 [4 South. 106, 112 (5 Am. St. Rep. 342)], is a similar declaration in these words: 'The mere fact that an act is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of property rights, and the party aggrieved has no other adequate remedy for the prevention of the irreparable injury which will result from the failure or inability of a court of law to redress such rights.'

"The law is full of instances in which the same act may give rise to a civil action and a criminal prosecution. An assault with intent to kill may be punished criminally, under an indictment therefor, or will support a civil action for damages, and the same is true of all other offenses which cause injury to person or property. In such cases the jurisdiction of the civil court is invoked, not to enforce the criminal law and punish the wrongdoer, but to compensate the injured party for the damages which he or his property has suffered, and it is no defense to the civil action that the same act by the defendant exposes him also to indictment and punishment in a court of criminal jurisdiction."

Finally, there remains to inquire whether the decision in the National Fireproofing Case will prevent the complainants from recovering. In that case the Circuit Court of Appeals held that the combination complained of was not a violation either of the Sherman Law or of the General Business Law of this state, and then went on to consider whether it was a conspiracy at common law maliciously to injure the complainant which would give it a right of action. The particular provision attacked was the agreement between the Master Builders and the Bricklayers' Union, forbidding the subletting of fireproofing. The court held that, this provision being for the benefit of the bricklayers, and not being maliciously aimed at the complainant, it had no right to recover. Indeed, the complainant was not directly, but only incidentally, injured. If its charter had authorized it to contract for the erection of buildings, it would have been under no disadvantage whatever. The New York market was closed to it because it could contract only for the erection of fireproofing, a separate contract for which was forbidden by the agreement. Therefore it was held that the object of the

agreement being lawful, and the means taken to enforce it lawful, the complainant, although injured, had no cause of action. For the same reasons the court held that the combination did not violate the Penal Code, § 168, subd. 6, which is the same as the section of the Penal Law now under consideration. I think the difference between that case and this clear. In this there is a combination to do an act made unlawful by statute and punishable as a misdemeanor which has, at least in certain instances, been enforced against the complainants by unlawful means.

The decision of the Court of Appeals in Kellogg v. Sowerby, 190 N. Y. 370, 83 N. E. 47, does cause doubt. It was a civil action for damages, the plaintiffs charging the defendants with combining to prevent them from using their elevator or competing in the business of elevating grain. The Court of Appeals held that, although the agreement was a conspiracy in violation of the statute, the defendants should have been allowed to show at the trial that when they entered into the combination they supposed the plaintiffs were also going to enter into it, because this would prove that they did not by the combination intend to injure the plaintiffs, in which case the plaintiffs could not recover.

This seems to be treating a conspiracy in violation of statute as if it were a combination at common law to restrain trade or prevent competition without malice to the plaintiffs. Of such a combination, although not valid nor enforceable between the parties, no third party could complain at common law, unless it was made maliciously to injure him. Mogul S. S. Co. v. McGregor (1892) App. Cas. 25. But under the statute in question the offense is a misdemeanor, and it makes no difference what the intention of the parties to the agreement was, and so the court said, in the Kellogg Case:

"The error committed in the exclusion of this evidence requires a reversal of the judgment. In order to guard against any possible misapprehension, however, on another trial, it is proper to say that we do not think that good motives on the part of those who enter into a combination in restraint of trade save it from the condemnation of the law of this state. People v. Sheldon, supra [139 N. Y. 251, 34 N. E. 785, 23 L. R. A. 221, 36 Am. St. Rep. 690]. The fact that the parties to an agreement of such a character may have honestly believed that it would be beneficial instead of injurious to commerce does not render it legal. The law denounces it if it is designed to prevent competition and will have that effect whatever the intent of the parties. Where, on the other hand, the parties act in the honest belief that a third party is to join in the agreement, that fact tends to disprove any intent to injure him, whatever may be said of the agreement as to others."

Furthermore, I cannot see why the conspirators should have been excused because they did not learn until after they had entered into the unlawful agreement that the plaintiffs would not join it. The conspiracy was a continuing one reaffirmed de die in diem, and it would seem that the defendants should be held liable if the plaintiffs were directly injured because they continued an unlawful conspiracy after they did know the plaintiffs would not become parties to it.

While there is no evidence of a special hostility to the complainants in particular, as maintaining an open shop, the proofs show a persistent campaign has been made by the combination to compel them to unionize their shop. They suffer in a way different from the commu-

nity at large. This entitles them to all available civil remedies, among others to injunctive relief. A decree will be entered granting a permanent injunction in accordance with this opinion.