[S. F. No. 20948. In Bank. June 4, 1962.]

HOPE MARSHALL, Plaintiff and Appellant, v. INTER-
NATIONAL LONGSHOREMEN'S AND WARE-
HOUSEMEN'S UNION, LOCAL 6, DISTRICT 1,
Defendant and Respondent.

782

Robert L. Hughes for Plaintiff and Appellant.

Barfield, Barfield & Dryden, Barfield & Barfield and Herbert Chamberlain for Defendant and Respondent.

DOOLING, J.—Defendant union, an unincorporated association, maintained a parking lot adjacent to its meeting hall as an accommodation for its members. Plaintiff, a member of the union, was injured as the result of a fall over a concrete obstruction in the lot, allegedly constituting a dangerous condition maintained by the union and certain of its officers, who are also named defendants. Defendant union moved for a summary judgment, supported by the affidavit of the president setting forth the status of the union as an unincorporated association and plaintiff's membership in the union at the time of the accident as precluding recovery from the union in the negligence action. The union's motion was granted and from the judgment thereupon entered, plaintiff appeals.

The question to be determined is whether a member of an unincorporated labor union may maintain an action against the union for personal injuries allegedly caused by negligence of the union in maintaining its property.

Defendant union relies on the general rule that "the members of an unincorporated association are engaged in a joint enterprise, and the negligence of each member in the prosecution of that enterprise is imputable to each and every other member, so that the member who has suffered damages . . . through the tortious conduct of another member of the association may not recover from the association for such damage." (Note 14 A.L.R.2d 473-474.) The basic rationale of this rule is that an unincorporated association, whether it be a fraternal organization or a labor union, like an ordinary partnership, has no legal entity or existence apart from its members. In legal effect each member becomes both a principal and an agent as to all other members for the actions of the group itself; and accordingly as a principal he has no cause of action against a coprincipal (the group) for the wrongful conduct of their common agent.

This precise question has not been previously litigated in the courts of this state but has been the subject of decision in the courts of several other jurisdictions, and they appear to have followed the general rule of nonliability of the unincorporated association in an action for negligence by one of its members. Typically the cases have involved fraternal organizations or beneficial associations: *Carr* v. *Northern Pac. Beneficial Assn.* (1924) 128 Wash. 40 [221 P. 979] (negligent selection of physicians and negligent hospital care furnished); *Koogler* v. *Koogler* (1933) 127 Ohio 57 [186 N.E. 725] (negligent maintenance of fire escape); *Roschmann* v. *Sanborn* (1934) 315 Pa. 188 [172 A. 657] (negligent operation of a bus); *De Villars* v. *Hessler* (1950) 363 Pa. 498 [70 A.2d 333, 14 A.L.R.2d 458] (negligent operation of a steam table); *Mastrini* v. *Nuova Loggia Monte Grappa* (1954) 1 Pa. D. & C. 2d 245 [17 Cambria County R. 161] (negligent maintenance of lodge's floor); *Duplis* v. *Rutland Aerie, No. 1001 etc. Eagles* (1955) 118 Vt. 438 [111 A.2d 727] (negligent maintenance of stairway).

The only case cited as applying the same rule where a labor union was involved is *Hromek* v. *Gemeinde* (1941) 238 Wis. 204 [298 N.W. 587]. There plaintiff, a union member, tripped over a platform negligently placed in the union's meeting hall by officers of the union and was injured. In holding that plaintiff had no cause of action against the union, an unincorporated association, for its negligence, the court reasoned that the union had "no entity or existence apart from that of its members" who were co-principals and "while a principal may sue an agent for dereliction of duty, he may not sue his co-principals for the dereliction of their common agent." (298 N.W. at p. 589.) To like effect: *Marchitto* v. *Central R. Co. of New Jersey* (1952) 9 N.J. 456 [88 A.2d 851].

Basically this rule has been arrived at by applying to other forms of voluntary, unincorporated associations the rules of law developed in the field of business partnerships. Under traditional legal concepts the partnership is regarded as an aggregate of individuals with each partner acting as agent for all other partners in the transaction of partnership business, and the agents of the partnership acting as agents for all of the partners. When these concepts are transferred bodily to other forms of voluntary associations such as fraternal organizations, clubs and labor unions, which act normally through elected officers and in which the individual members have little

or no authority in the day-to-day operations of the association's affairs, reality is apt to be sacrificed to theoretical formalism. ■■■ The courts, in recognition of this fact, have from case to case gradually evolved new theories in approaching the problems of such associations, and there is now a respectable body of judicial decision, especially in the field of labor-union law, with which we are here directly concerned, which recognizes the existence of unincorporated labor unions as separate entities for a variety of purposes, and which recognizes as well that the individual members of such unions are not in any true sense principals of the officers of the union or of its agents and employees so as to be bound personally by their acts under the strict application of the doctrine of *respondeat superior*.

The first major breakthrough in this respect is found in the decision of the United States Supreme Court in *United Mine Workers of America* v. *Coronado Coal Co.* (1922) 259 U.S. 344 [42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762]. In that case the court reached the conclusion, although there was no statute expressly so providing, that an unincorporated labor union was responsible for its torts and could be sued therefor as an entity in the federal courts. The court concluded (259 U.S. at p. 391) that "such organizations are suable in the federal courts for their acts, and that funds accumulated to be expended in conducting strikes are subject to execution in suits for torts committed by such unions in strikes." The court noted at page 390 that in *Taff Vale Ry. Co.* v. *Amalgamated Society of Railway Servants* (1901) A.C. 426, 1 B.R.C. 832, a like conclusion had been reached by the British court. Later in *United States of America* v. *White* (1944) 322 U.S. 694 [64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202], the United States Supreme Court said at pages 701-702: "Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. This difference is as well defined as that existing between individual members of the union. The union's existence in fact, and for some purposes in law, is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws which, in controversies between members and union, are often enforced by the courts. The union engages in a multitude of

business and other official concerted activities, none of which can be said to be the private undertakings of the members. Duly elected union officers have no authority to do or sanction anything other than that which the union may lawfully do; nor have they authority to act for the members in matters affecting only the individual rights of such members." The court concluded this phase of the discussion: "The actions of one individual member no more bind the union than they bind another individual member unless there is proof that the union authorized or ratified the acts in question. At the same time, the members are not subject to either criminal or civil liability for the acts of the union or its officers as such *unless it is shown that they personally authorized or participated in the particular acts.*" (332 U.S. at p. 702; emphasis added.)

Thus the United States Supreme Court in these two cases has swept away, so far as federal law is concerned, the two main bases upon which the rule that a member of a union may not sue the union for a negligent tort has been principally placed, i.e., 1. that the union is not a legal entity, and 2. that each member of the union is liable as a principal under the doctrine of *respondeat superior* for the acts of the union's officers, agents and employees.

The courts of several jurisdictions have recognized that members of labor unions are not to be held vicariously liable for the acts of other members or the officers or agents of the union under the strict doctrine of *respondeat superior* but that such liability must rest, if at all, upon their personal participation in, or authorization of, such acts. (*Sullivan* v. *Barrows* (1939) 303 Mass. 197 [21 N.E.2d 275, 279]; *Sweetman* v. *Barrows* (1928) 263 Mass. 349 [161 N.E. 272, 275, 62 A.L.R. 311]; *Moore* v. *District 50 of United Mine Workers of America* (Ohio 1954) 131 N.E.2d 462, 464; *Michaels* v. *Hillman* (1920) 112 Misc. 395 [183 N.Y.S. 195, 207]; *Lawlor* v. *Loewe* (1911) 187 F. 522, 526 [109 C.C.A. 288]; *Fray* v. *Amalgamated Meat Cutters, etc. Union* (1960) 9 Wis.2d 631 [101 N.W.2d 782, 786]; *Thomas* v. *Dunne* (1955) 131 Colo. 20 [279 P.2d 427, 432].) In *Fray, supra,* 101 N.W.2d at page 786, the Wisconsin Supreme Court said: "In treating the union as a legal entity for a limited purpose it seems entirely reasonable that the funds and assets of the union devoted to the common cause should alone be the limit of the entity's

liability for such purpose." (*Cf. Thomas* v. *Duane, supra,* 279 P.2d, p. 432.)

Consistent with this development, the unincorporated labor union has been recognized as a separate legal entity for many purposes by the California courts. In *Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal.2d 379, 387 [106 P.2d 403], it was noted that "the union shop contract is an agreement running between the employer and the union as an entity"; in *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 147 [231 P.2d 6, 21 A.L.R.2d 1387], the union as an entity was commanded in a mandamus proceeding to afford its suspended member a "full and fair hearing" incident to reinstatement demands; in *Mooney* v. *Bartenders Union Local No. 284* (1957) 48 Cal.2d 841, 843 [313 P.2d 857], the unincorporated labor union was treated as a corporation insofar as the right of a member "to inspect its financial records." An active member may sue his union for damages for breach of contract. (*Elevator Operators etc. Union* v. *Newman* (1947) 30 Cal.2d 799, 809 [186 P.2d 1]; *Deeney* v. *Hotel etc. Local 283* (1943) 57 Cal.App.2d Supp. 1023, 1026 [134 P.2d 328].) In *De Mille* v. *American Federation of Radio Artists* (1947) 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382], it was said at page 149: "The member and the association are distinct. The union represents the common or group interests of its members, as distinguished from their personal or private interest. 'Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. This difference is as well defined as that existing between individual members of the union.' (*United States* v. *White,* 322 U.S. 694, at page 701 [64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202].) Dues and assessments paid by members to an association become the property of the association and any severable or individual interest therein ceases upon such payment."

The union personality calling for application of "the rules applying to incorporated bodies of the same character" was recognized in *Oil Workers International Union* v. *Superior Court* (1951) 103 Cal.App.2d 512 [230 P.2d 71] at page 571: "The labor union is a developing institution and with its tremendous growth in importance and power has come to be more akin to the corporation than the partnership or the social or fraternal order. . . . It is obvious that such organi-

zations are no longer comparable to voluntary fraternal orders or partnerships; that they are *sui generis,* and approximate corporations in their methods of operation and powers. . . . To consider such organizations under present day conditions as mere social or fraternal orders or partnerships is to close one's eyes to the realities now existing.'' And in *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 193 [339 P.2d 801], it was noted that ''no more can the rank and file individual workmen conduct the business of a union than can the rank and file voters of a nation or state conduct its governmental and business affairs.'' (See also the dissenting opinion in *Carr* v. *Northern Pac. Beneficial Assn., supra,* 128 Wash. 40, 46-47 [221 P. 979, 981-982].)

Justice Cardozo once remarked: ''A fruitful parent of injustice is the tyranny of concepts. They are tyrants rather than servants when treated as real existences and developed with merciless disregard of consequences to the limit of their logic.'' (The Paradoxes of Legal Science (1928) p. 62.)

The concepts herein discussed, which are proper enough when applied to business partnerships for which they were originally developed, should not be so pressed with disregard of consequences to the very different field of the relationship between labor unions and their members. It is our conclusion that a member of a labor union is entitled to sue the union for negligent acts which he neither participated in nor authorized, and that any judgment that he may recover against the union can be satisfied from the funds and property of the union alone.[1]

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.

---

[1]We limit our holding to labor unions only, leaving to future development the rules to be applied in the case of other types of unincorporated associations.