MIAZGA, PLAINTIFF-APPELLANT, *v.* INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, LOCAL 18, ETC., ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26670. Decided February 14, 1964.

*Messrs. Rudd, Ober & Miller, Mr. Charles R. Miller* and *Mr. Charles J. Donohue*, for plaintiff-appellant.
*Messrs. Clyne, Moran & Perelman*, for defendants-appellees.

6

SKEEL, C. J. This appeal comes to this court on questions of law from a judgment entered for the defendants, The International Union of Operating Engineers, AFL-CIO, Local 18, 18-A, 18-B, 18-C, and the officers of the various unions and district representatives as named in the petition in the several capacities as therein set out but not as individuals. The plaintiff failed to plead further as to these defendants after a demurrer to the amended petition had been sustained on the ground, that as to the said defendants the petition did not state a cause of action. The case remains pending as to each of said persons named as individuals.

The allegations of the amended petition are that the plaintiff is a member of the defendant union which is an unincorporated association of persons organized to act for the benefit of its members; that the defendant union and the individual defendants acting individually and as officers, representatives and employees of the defendant union, individually and jointly, wickedly and maliciously published of and concerning this plaintiff and others named in a report to the members of Locals 18, 18-A, 18-B, 18-C and its branches of the International Union of Operating Engineers, which included therein a false and defamatory charge that read:

"You will recall that early in June, on the 7th and 8th, the state meetings were held in Columbus. At that time we were very fortunate in having our great General President Joe Delaney with us. For a time, however, it appeared that he might not be with us because inquiries were made from this rebel group concerning how Brother Delaney would come from Washington, D. C., and after these inquiries were made it was learned that there was a plan to meet his airplane and use a sawed off shotgun on him and Brother Hunter Wharton, the General Secretary-Treasurer of The International Union. Forearmed with this information, the Columbus Ohio Police Department was notified and when Brother Delaney's airplane landed it was taken to a special gate at the airport and he got off of

the airplane under a police guard. He was immediately put into an automobile and taken from the airport without delay.

"This incident occurred on June 6, 1958. On June 7, 1958, the Executive Board of Local 18 at its state meeting in Columbus, passed the following resolution, as the minutes of that meeting disclosed:

" 'A resolution was offered by Brother Rutherford and unanimously adopted, after motion duly made and seconded, reprimanding and censoring the members of District 1 who had been creating dissension and bringing disgrace upon the order.'

"The resolution read as follows:
" * * *

"Now, therefore, be it resolved that Local Union 18 of the International Union of Operating Engineers officially reprimand and censor the following named persons, members of District 1, for their participation in the movement (a) to overthrow the duly constituted government of Local Union 18 by the use of force and violence; * * * (f) to commit physical assault upon those who are members of our organization;
" * * *

"Norman Anderson, William Apley, Andrew Bugel, Jack Campbell, Andrew Conway, Anthony Conway, Clarence Ehrley, Edward J. Gallagher, Peter Gallagher, Ray Gallagher, William Gallagher, James P. Jones, James Mackin, Ray Mackin, Frank Miazga, Michael Rosul, Gail Wallett, Orville Williams, Melvin Jackfert, Campbell Blair, Frank Keating, Peter Banker, Tony Foelking, Steven Krall, Charles Cahlick."

that the foregoing false accusations were so prepared, printed and published of the plaintiff, well-known to be a member of the rebel group, as to mean, say and indicate to all readers and listeners and was intended to be understood by all to whom said report was read and circulated that the plaintiff participated in a criminal conspiracy to commit a felony on June 8th, 1958, by physically assaulting the president and secretary-treasurer of the international union with a sawed off shotgun. It is alleged that the accusations were false and published to cast hatred, contempt and scorn upon the plaintiff and to imply, for these and other reasons set out, that he was unfit for the

position of honor and responsibility, that is, that of a member and citizen.

The petition contains seven separate causes of action based on the said report in causing it to be read before the membership in certain districts and causing it to be published and mailed to a large number of union members of the defendant local union in Ohio. After pleading that serious and irreparable harm was suffered by plaintiff because of said libelous publications plaintiff seeks both compensatory and punitive damages on each of the several causes of action.

The primary claims on which the demurrer is based are that the alleged accusations are not libelous per se and that special damages have not been alleged; second, that the alleged defamatory words do not refer to the plaintiff; and third, the unions should be dismissed because a member of an unincorporated association is without legal standing to sue his association to recover damages for a tort it inflicted upon him.

It must be concluded that the trial court by sustaining the demurrer as to the defendant unions and their officers acting in the capacities pleaded overruled the defendants' first and second grounds for the demurrer and these questions, therefore, are not before us. We are here concerned with the third claim set out in the demurrer, that is, that the petition does not state a cause of action for the legal reason that a member of a voluntary association of persons cannot seek damages resulting from a tort committed by such unincorporated voluntary association. The claimed theory of law is that a member of an unincorporated association of persons cannot seek damages in an action sounding in tort against such association or its officers since by his membership he is one of the principals in the association and engaged with all the other members in a joint enterprise; that in bringing such action he is in effect bringing an action against himself. This was the holding of cases in this state decided prior to 1955. See:

*Koogler* v. *Koogler*, 127 Ohio St., 57, 186 N. E., 725; *McCann* v. *Local Union No. 476*, 28 Ohio Law Abs., 385; *McClees* v. *Grand International Brotherhood of Locomotive Engineers*, 26 Ohio Law Abs., 672, 18 N. E. (2d), 812 and *O'Neill* v. *See Bee Club*, 69 Ohio Law Abs., 442, 118 N. E. (2d), 175.

At the time these cases were decided, Section 10060 was a

part of Chapter VI of the General Code dealing with religious and benevolent associations.

The section then read:

"Such association or society may sue or be sued, answer or be answered unto, plead or be impleaded in any court in this state."

In adopting the Revised Code in 1953, the legislature combined the substance of Section 10060, General Code, with former Sections 10057, 10058, 10059 and 10061, General Code, all of which then became Section 1715.42, Revised Code. This section as it now appears in Chapter 1715, Revised Code, is headed "Religious and Benevolent Organizations." It is abundantly clear, therefore, that when such Revised Code section provided (in which the wording was changed), "* * * such association or society may sue or be sued in any court in this state," labor unions were not intended to be included. The adoption of a new chapter (Section 1745, Revised Code), in 1955, headed "Unincorporated Associations" however, for reasons hereafter set out, did by its provisions include all unincorporated associations including unincorporated labor unions. Sections 1745.01 to 1745.04, inclusive, Revised Code, provide:

"Section 1745.01, Revised Code. Unincorporated association may contract, sue or be sued.

"Any unincorporated association may contract or sue in behalf of those who are members and, in its own behalf, be sued as an entity under the name by which it is commonly known and called."

"Section 1745.02, Revised Code. Assets subject to judgments, execution and other processes.

"All assets, property, funds, and any right or interest, at law or in equity, of such unincorporated association shall be subject to judgment, execution and other process. A money judgment against such unincorporated association shall be enforced only against the association as an entity and shall not be enforceable against the property of an individual member of such association."

"Section 1745.03, Revised Code. Service of summons upon unincorporated association.

"Such association may be served with summons by delivering a copy to either the president, the secretary, or the

treasurer in the order named, or any other officer of the association, or to such person as may be designated by the association as one upon whom process may be served; if no such officers or person can be found, then upon any trustee or director of the association having in charge the management of any property of the association. If none of the officers or persons can be found in the state, service may be made on any person acting for the association or in charge of an office or a place of business of the association in the state."

"Section 1745.04, Revised Code. Action not affected by change in officers or membership.

"No cause of action by or against any such unincorporated association shall abate by reason of the death, removal, or resignation of any officer, or by the death or legal incapacity of any member, or by reason of any change in membership of the association during the pendency of the cause."

These provisions clearly set out a substantive procedural rule of law whereby an unincorporated association organized to further a specific interest of its members is subject to the jurisdiction of the courts of this state as a legal entity. The manner of service is provided to bring only the unincorporated association as a legal entity into court. The individual members of the association are not brought under the jurisdiction of the court and are not, therefore, parties to the action. The members are not subject to respond in payment of a money judgment, if entered against the association after trial of the issues. A proper interpretation of the statute shows that it was the legislative intent in adopting the act to make unincorporated associations legal entities for all purposes of law.

A theory of nonliability of an unincorporated association in an action against the association by a member injured as a result of a tort of an officer, a member or employee acting in furtherance of the association's purposes had its beginning in the law of partnership. See Article by Professor Judson A. Crane, "Liability of Unincorporated Association, for Tortious Injury to a Member," Volume 16, No. 2, Vanderbilt Law Review, page 319 (March, 1963). The author states that the rule is an application of a general proposition that the participants in a joint enterprise are co-principals as to the acts or omissions of all other co-participants and their employees (see 14 A. L. R.

[2d], 473). In this article it states that under the aggregate view partners are co-principals whereby an action by one of the co-principals against the aggregate is, in fact, an attempt to sue himself. This common law rule, while probably justified as to a partnership and relatively small unincorporated associations organized for the mutual benefit of their members, the members in a more or less direct way, participating and directing its affairs, is completely outmoded when dealing with modern labor unions whose membership in local organizations is numbered in many instances in excess of ten thousand and the number of members in their national counterparts being in most cases in the hundreds of thousands. The management and control of a union by its officers is far removed from the judgment of the individual member. Union organizations have grown into and become a separate and important part of the economy, industrial and commercial life of the democratic system with power equal to that of all the other component parts of that system.

Its existence and procedures are supported by law even to the extent of holding complete control over the right of individual workmen to work where the closed shop is provided under contract. Having a legal entity which is required in the exercise of its powers conferred by law over its members in relation to the conditions of their employment, it would seem to be an unusual situation if such power to act as a legal entity under the law of the land should vanish when a member suffers damage as a result of an intentional wrong or tort committed against him as an individual by officers or their agents or fellow union members in the course of carrying on the affairs of the union. In the Crane article, reported in the Vanderbilt Law Review, supra, at page 323, the author says:

"* * * there has been a breakthrough of the rule of nonliability of the labor organization for injuries caused by negligence in a matter in which there is no special personal duty owed the member. *Marshall* v. *International Longshoreman's & Warehousemen's Union* (57 Cal. (2d), 781, 22 Cal. Rptr., 211, 371 P. (2d), 987), is the pioneer case. Plaintiff, a union member, was injured by falling over a concrete obstruction in a parking lot maintained by the union for the convenience of members attending its meetings. Alleging negligence, plaintiff sued the

union and certain of its officers. In the superior court defendants' motion for summary judgment was granted. The district court of appeal affirmed. (*Marshall* v. *International Longshoreman's & Warehousemen's Union,* 197 A. C., 697, 17 Cal. Rptr., 343 [1961].) The supreme court granted a hearing and reversed. After noting that labor unions have often been treated as entities, the opinion of the court states that the co-principal rule was developed in dealing with business partnerships treated as aggregates. The large social organization or labor organization is quite different in numbers and lack of authority of rank and file members over management. To apply to them the same rule as in partnership would sacrifice reality to theoretical formalism. Quoting Justice Cardozo, The Paradoxes of Legal Science (Cardozo, The Paradoxes of Legal Science 62 [1947]), the court held that concepts proper enough in the field where first developed should not be applied with disregard of consequences in the very different field of the relationship between unions and their members. (57 Cal. (2d) at 787, 22 Cal. Rptr. at 215, 371 P. (2d), 991.) Any judgment plaintiff may recover can be satisfied out of the funds and property of the union alone.''

In the case of *Inglis* v. *Operating Engineers Local Union No. 12,* 18 Cal. Rptr. 187 (District Court of Appeals, 1962), the plaintiff, a member in good standing of defendant union, was injured when an assault and battery was inflicted upon him by union officers while attending a union meeting. Upon trial in the Superior Court, the trial judge granted a nonsuit as to the union for the reason that the plaintiff, being a member and, therefore, a co-principal, could not maintain the action against the union.

The court of appeals reversed the judgment of the trial court and held as set out in headnote 7 of the California Reporter:

''(7) Union member was entitled to maintain action against union for intentional and wrongful acts of its officers and members for injuries inflicted upon him as a result of an assault and battery while attending a union meeting controlled by union officers in a hall rented by union.''

An examination of the opinion shows that the court gave

consideration to a great number of the leading cases concerned with the right of a member of an unincorporated association to bring action either for breach of contract or tort or for an intentional wrong and for such reasons seeking damages against the association. Attention was first given to Section 388, Code of Civil Procedure of California, which provides:

"When two or more persons associated in any business transact such business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all of the associates and the individual property of the party or parties served with process in the same manner, as if all had been named defendants and had been sued upon their joint liability."

The court correctly held this statute is one dealing with procedure and did not provide that an unincorporated association was a legal entity for substantive purposes nor establish a rule permitting actions at law against it to acquire jurisdiction over it in such actions as a legal entity. The court said that an unincorporated association, an aggregate of individuals called for convenience by a common name was not regarded at common law as a legal entity with collective rights and liabilities separate and apart from its members. It had no legal capacity to become a party to an action in a court of law nor could a member institute a suit against it for damages resulting from wrongful conduct of the association through its officers, members or employees acting for the association in their respective capacities. The section here considered (Section 388, Civil Code of Procedure of California) while more completely drawn, was similar in context with Section 10060, General Code, now a part of Section 1715.42, Revised Code.

The court, after overruling other contentions of the plaintiff, said at page 192 of the opinion, as reported in the California Reporter:

"Appellant finally argues that even though a member cannot maintain against an unincorporated association an action for the negligent acts of its members, officers or employees, the principles precluding such suit have no application to one for their intentional wrongs."

14

A review of the various cases involving suits by members against labor unions, both in and out of this jurisdiction, seem to lend support to this contention. On page 194 of the opinion, the court proceeds as follows:

"'* * * Recognizing that a member has a cause of action for damages against his union for wrongul expulsion (*International Ass'n. of Machinists* v. *Gonzales*, 356 U. S., 617, 78 S. Ct., 923, 2 L. Ed. [2d], 1018), and relying on *Taxicab Drivers' Local Union No. 889* v. *Pittman*, Okl., 322 P. (2d), 159, the court continued: (quoting in part from *United Ass'n of Journeymen, etc.*, v. *Borden*, 160 Tex., 203, 328 S. W. [2d], 739, 742) 'There is thus at least one exception to the general rule that a union representative is to be regarded as an agent for all of its members in everything he does. The wrongful act will not be imputed to an injured member if committed in the course of an undertaking that is strictly adverse to the latter's interests. This is simply another version of the agency rule that a principal is not liable for the torts committed by his agent while acting adversely to him. See 3 C. J. S. Agency, Sec. 259; Nechem (sic) on Agency, (2d) ed., 1914, Vol. 2, p. 1311, Section 1728.' (p. 742 of 328 S. W. [2d].) And again at page 744 of 328 S. W. (2d): 'The legal responsibility of an unincorporated association for the wrongful conduct of its agents should not be substantially different from that of an ordinary principal. The general rule is one principal is not civilly liable to another for the tortious acts of an agent who acts for both parties with their consent. He is responsible, however, where there is collusion with the agent, active participation in the wrongful act, or the same is otherwise authorized or ratified. See *Ringer* v. *Wilkin*, 32 Idaho, 330, 183 P., 986; *Boss* v. *Tomaras*, 251 Mich., 469, 232 N. W., 229; *Fuchs* v. *Leahy*, 321 Mo., 47, 9 S. W. (2d), 897; 3 C. J. S. Agency, Section 260.' '(7) It appears to us that the intentional and wrongful use of force against a member because of, or to prevent some act in connection with the internal affairs of the union of which the members, officers or employees did not approve, is little different than the wrongful and intentional act, peaceful in nature, of discharging, expelling or suspending a member from membership or removing him from office because of some act of which the members or agents

or officers disapproved; in each instance the ultimate purpose is to interfere with his rights of membership. Moreover, it can hardly be said that in beating up the plaintiff, the members and officers were acting for his as well as for the benefit of all other members' without question the violent undertaking was strictly adverse to plaintiff's interests. * * *''

As indicated, the reversal of the trial court's judgment on demurrer filed by plaintiff, thus holding that the defendant union was subject to the court's jurisdiction in the action filed by plaintiff, returned the case to the trial court for trial on the merits.

The Supreme Court of California (see 23 Cal. Reptr., 403, 373 P. [2d], 467, July 31, 1963) in effect, affirmed the judgment of the appellate court. In its per curiam opinion, the Supreme Court, after stating that the sole question presented on appeal was the right of a member of a labor union to maintain an action for damages resulting from an intentional tort committed against him by an officer of the union, the union being an unincorporated association, said:

''* * * A similar contention (of the union) was rejected by this court in the recent case of *Marshall* v. *International Longshoremen's and Warehousemen's Union*, 57 A. C., 829, 830, et seq., 22 Cal. Rptr., 211, 371 P. (2d), 987, where we held that a member of an unincorporated labor union was entitled to sue the union for personal injuries resulting from negligent acts which he neither participated in nor authorized and that any judgment that he might recover against the union could be satisfied from the funds and property of the union alone. * * * For the purposes of the question presented here there is no reasonable basis for distinguishing between negligent and intentional torts, * * *.''

This case and the article by Professor Crane (cited supra) are in complete accord with the legal trend of today in meeting and overruling the restriction based on earlier cases granting immunity from legal responsibility (other than that of its members) of an unincorporated association. Such an association, and particularly a labor union organized to fill a necessary and important place in the industrial life of the people, protecting with its strength generated by its large membership and actions of its officers in exercising its powers under delegated authority,

and by rights exercised by it as an entity under authority of law in dealing with labor relations, should be like any other corporate entity, held legally responsible as an association in a proper case for injuries inflicted by its wrongful acts not only to members of the public but to its members as well. The early common law rules in respect to the immunity from legal liability of an unincorporated association are not and never were adequate and were not developed to meet the impact presented by an association that is organized to control and supervise as a legal entity the rights of its members. Moreover, the individual members of a labor union should not be compelled to suffer damages without right of legal redress from wrongs inflicted intentionally or otherwise by the union in carrying out the purposes legally assumed by it in the conduct of its affairs.

The recognition of an organization of persons artificially created, as a legal entity, has been, until the present time, and in most instances still is, the subject of judicial determination. Legislative action in this field has not been used to fix the legal status of such an association of persons organized by its members under authority of law or otherwise where the members agree to conduct its affairs through elected trustees or directors and officers whose duties and powers are subject to the will of such boards as defined by constitutions and by-laws adopted by those organizing the association or as amended thereafter as the basic law by which its business is conducted and its purposes achieved.

The subject had not been dealt with by the legislature of Ohio until it passed Chapter 1745, Revised Code, in 1955.

Corporations in early times were chartered by Kingly Edict and later by separate legislative action in each case and finally as it is today by compliance under the authority of a Corporation Code by the voluntary action of the incorporators acting within the code provisions. Corporations thus organized are recognized under the law as legal entities. There is no statutory provision in the Code to that effect. But since their inception, corporations under fiction of law have been dealt with for all purposes of law as a legal entity which rule is sustained by the many sections dealing with service, liability for taxes and the like. See Chapters 1 and 2 "Modern Corporation Law" by Oleck (1958).

That a corporation has the status of a legal entity without legislative decree based on an accepted legal fiction is made clear by the case of *State, ex rel.* v. *Safford,* 117 Ohio St., 576, 159 N. E., 829, where, in the first paragraph of the syllabus, the court said:

"In the furtherance of justice, the fiction of a corporate entity may be disregarded where the corporation is so controlled and its affairs so conducted as to make it merely an instrumentality for the purpose of evading and circumscribing a state law."

Some unincorporated associations by reason of the manner of their organization, the purposes to be accomplished and the relation of their functions to the commercial and industrial life of the community and, in part, at least, recognized and under the supervision of law, must be considered, as is true of corporations, as having by legal fiction an entity recognized by law separate and apart from their members. This must be true of unincorporated labor unions. Being in control by a majority vote in a particular commercial or industrial establishment, negotiations with employers on wages and working conditions under the Taft Hartley Act, even though some of the employees are not members of the union selected, participation in the management of trust funds collected under the terms of an agreement between a union and an employer and in many other functions dealing with labor relations wherein the union acts as a legal entity, are of common knowledge in this day and age.

The earlier cases, as hereinbefore referred to, attempt to apply the rule of partnership liability to the members of an unincorporated association functioning as a labor union, and are clearly not applicable. To attempt to apply individual liability as principals (as is true in partnership law) to all the members of a union for wrongs committed by its officers or members in carrying out the business of the union is to bring about utter confusion in the law. The rights of members of an unincorporated union have no natural basis for comparison with the rights of members of a commercial partnership.

There is no common ground upon which to draw an analogy of legal responsibility either in contract or tort between the

18

members of a partnership and those of an unincorporated union. The trend of the unincorporated labor union representing the working man in an atmosphere of our present day industrial life bestows upon such organization a legal status separate and apart from its members. The legal fiction of the entity for all purposes of law of corporations is equally applicable to unincorporated labor unions.

It must be concluded, therefore, that in passing Chapter 1745, Revised Code, the legislature of Ohio recognized the uncertainty and inadequacy of the common law and the conflict in many of the cases dealing with the legal responsibility of unincorporated associations and the manner in which justiciable wrongs could become the subject of judicial inquiry. The act clearly provides that such associations can be sued as a legal entity, the manner in which service may be had, and what property may be subject to the payment of a judgment for money when and if rendered after trial.

We, therefore, hold that the defendant unions are in contemplation of law and by the provisions of Chapter 1745, Revised Code, subject to the jurisdiction of the courts in a case in which a member of the union alleges to have been injured by an intentional tort committed against him as an individual involving his individual rights by the union in carrying out its functions. This requires the judgment of the trial court as to the defendant unions be reversed and as to them the cause is remanded with instructions to overrule the demurrer and for further proceedings according to law. This conclusion also requires that as to the defendants named, sued as officers, the judgment dismissing them as defendants be affirmed. The question of the right to assert liability against the defendants named as individuals was not challenged by this appeal and they are, therefore, still before the court as individuals.

SILBERT and CORRIGAN, JJ., concur.